UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DONNA BATEMAN, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION NO. |
| v. : | 3:04-CV-1379 (JCH) |
| : | |
| LESLIE FIALKIEVICZ, and, : | |
| MARIA R. KEWER : | |
|     Defendant. : | MAY 15, 2006 |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

The plaintiff, Donna Bateman, brings this action against the defendants, Leslie Fialkievicz and Maria R. Kewer, employees of the Judicial Branch of the State of Connecticut, in their individual capacities, pursuant to 42 U.S.C. §§ 1983 and 1988 and the First Amendment of the United States Constitution. Bateman alleges, inter alia, that the defendants took adverse employment action against her in retaliation for her speech on matters of public concern, in violation of her rights under the First Amendment. Fialkievicz and Kewer now move for summary judgment on Bateman's claim, arguing, inter alia, that no genuine issue of material fact exists with regard to Bateman's inability to sustain her burden of proof for her claim. For the reasons stated below, the defendant's motion is GRANTED.

**I. FACTUAL BACKGROUND**[1]

Bateman was employed as a court monitor in the Judicial District of Windham from 1999 until November 2003. From May 2003 until her separation in November

---

[1] For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving party, here the plaintiff, where there is evidence to support her allegations.

2003, Bateman was the only permanent court monitor in the Windham Judicial District.

Fialkievicz became the Acting Official Court Reporter for the Judicial District of Windham in December 2002, at which time she became Bateman's supervisor. Fialkievicz was named the Official Court Reporter on September 5, 2003. In her position as Official Court Reporter, Fialkievicz supervised court reporters, court recording monitors, and clerical staff. At all relevant times, Kewer was employed as the Program Manager for Court Operations Administration by the Judicial Branch of the State of Connecticut. In this role, Kewer oversaw the implementation of program, policies, and procedures, and monitored programs and policy for compliance with applicable statutes, regulations, and objectives.

Bateman asserts that she was constructively discharged from her employment in the Judicial Branch of the State of Connecticut in retaliation for certain complaints that she made regarding the training and management of court reporters in the course of her employment as a court recording monitor. It is undisputed that, on November 13, 2003, Bateman submitted her resignation from her position to the Judicial Branch. The parties dispute whether Bateman's resignation was voluntary or whether it was made under circumstances constituting constructive discharge. The parties also dispute whether statements that Bateman had made prior to her resignation constitute speech deserving of protection under the First Amendment, and whether actions that Fialkievicz and Kewer took with respect to Bateman were causally connected to Bateman's speech or whether there were independent reasons for their actions.

Bateman's retaliation claim is based in substantial part on statements that she allegedly made in a conversation with Judge Foley, the Administrative Judge of the Windham Judicial District, in August 2003. According to Bateman, she spoke to the Judge about "improprieties" in the operation of the court monitor's office, including the removal of answering machines for the court monitors in a couple of branches, the formatting of transcripts, and the training of new employees. Pl's Rule 56(a)(2) Statement [Doc. No. 29], ¶ 14, Bateman Depo. Tr., p. 107-11. Her deposition testimony also demonstrates that, in conversation with Judge Foley, Bateman sought to have Fialkievicz disciplined for her poor management of the court monitors, and for leaving the office without telling anybody.[2] Defs' Rule 56(a)(1)Statement, Bateman Depo. Tr., p. 46. Bateman also told Judge Foley that she felt that she and Fialkievicz had different work ethics and could not work together, that Fialievicz was "targeting" her, and that, if Fialkievicz was given a permanent position, then Bateman would need to be transferred. Id. at p. 48. In her deposition testimony, Bateman described the matters she raised with Judge Foley as "[t]he formatting [of transcripts], the proofreading, the appeal process, Leslie not coming into work and not telling anybody, or leaving. I

---

[2] In her deposition testimony, Bateman was vague as to when she spoke to Judge Foley, and whether she had more than one conversation with him. Bateman's Complaint alleges that she had a single conversation with Judge Foley relative to the events at issue. Complaint [Doc. No. 1], ¶¶ 8-11. Consistent with the allegations in her complaint, the portions of Bateman's deposition testimony cited by Bateman regarding Judge Foley suggests that she had a single conversation with him in August, 2003. Bateman Depo. Tr., p. 110-11. There is no other evidence indicating when and how many times Bateman spoke to Judge Foley.

guess what I mean is any kind of complaint that I had regarding Leslie."[3]  Id. at p. 114.

Prior to speaking to Judge Foley, Bateman also discussed many of these same issues, on more than one occasion, with Nancy Brown, the Program Manager of Transcript Services.  Id. at p. 108-110; Defs' Rule 56(a)(2) Statement, Kewer Aff., ¶ 28.  Specifically, Bateman spoke to Brown regarding the removal of answering machines, the formatting of transcripts, and the policy of giving free copies of transcripts to judges and attorneys for the state.

In addition to the statements made in conversation with Judge Foley and Nancy Brown, Bateman argues that statements she made regarding unauthorized recordings of court proceedings are also deserving of First Amendment protection and were, in part, the cause for her alleged constructive discharge.  In 2003, Bateman spoke to several people about unauthorized recordings (i.e., made by someone other than an official court monitor) of court proceedings that occurred in 2002 and 2003 that Bateman alleges were conducted with the knowledge and permission of Fialkievicz.[4]

---

[3]It is unclear from the plaintiff's deposition testimony, which substantially provides the evidence in record concerning this motion for summary judgment, whether Bateman spoke to Judge Foley about the policy of giving free copies of transcripts to judges and State's attorneys.  In a portion of Bateman's deposition transcript not cited by Bateman in her Rule 56(a)(2) Statement, it appears that Bateman also spoke to Judge Foley regarding the unauthorized recordings of some court proceedings.  Defs' Rule 56(a)(1) Statement, Bateman Depo. Tr., p. 75.

[4]Bateman claims that unauthorized recordings of court proceedings were permitted to occur on several occasions in 2002 and 2003 by Fialkievicz.  In support of this allegation, Bateman, in her depostion, testified that she knows that these events occurred because of conversations she had about them with Fialkievicz.  Defs' Rule 56(a)(1) Statement, Bateman Depo. Tr., pp. 88-89.  The conversations that Bateman recalled

Bateman spoke to Fialkievicz directly regarding the recordings in April or July 2003. Id. at p. 88. At some point, Fialkievicz recommended to Bateman that she file a grievance with her union regarding the recordings. Id. at p. 75. Elizabeth Rourke, a court interpreter, was also present during a conversation that Bateman had with Fialkievicz regarding the recordings. Id. at p. 23.

Bateman spoke to Cindy Egan, her union representative, in July or August of 2003. In that conversation, Bateman spoke to Egan about issues regarding transcripts not being properly formatted, and Fialkievicz's requirement that Bateman receive Fialkieivicz's permission before scheduling doctors' appointments. Defs' Rule 56(a)(1) Statement, Bateman Depo. Tr., p. 14.

Bateman asserts that several events occurred in 2003 that support her claim that she was retaliated against and that she was constructively discharged. On September 4, 2003, the day that Bateman learned that Fialkievicz was going to be named the Official Reporter for the Windham Judicial District, a heated argument occurred between Bateman and Fialkievicz.[5] According to Bateman, Fialkievicz refused to go talk to Judge Foley with her and acted in a manner that Bateman found harassing. Id.

---

having with other people regarding the unauthorized recordings are inadmissible hearsay.
  In her pleadings, Bateman describes these recordings as "unlawful recordings," but does not identify what laws were violated in making the recordings. See Pl's Rule 56(a)(2) Statement, ¶ 2.

  [5]The parties dispute whether either Fialkievicz or Bateman shouted and used profanities at each other. See Defs' Rule 56(a)(1) Statement, ¶ 26; Pl's Rule 56(a)(2) Statemant, ¶ 26.

at p. 81-82.  Bateman left work early that day and consulted a physician, who concluded that she suffered from dyspepsia, anxiety, and insomnia exacerbated by workplace stress.  Pls' Rule 56(a)(2) Statement, ¶ 17, Bateman Depo. Ex. 7.  On September 5, 2003, Fialkievicz reported that Bateman's absence on September 4 was unexcused.  Defs' Rule 56(a)(1) Statement, ¶ 30, Fialkievicz Aff., ¶ 17.  On September 9, 2003, Bateman filed a grievance through her union that stated that Bateman "is experiencing pattern of unfair treatment, which is creating a hostile work environment." Id., Bateman Depo. Tr., p. 54-55, Ex. 5.

Bateman returned to work on September 12, 2003, at which time she provided a note to Judge Foley regarding her absence on September 4th.   Bateman filed a grievance through her union on September 12 for being "unfairly charged with unpaid leave."  Id., Bateman Depo. Ex. 4.

On September 15, 2003, Kewer wrote to Bateman to notify her of a "predisciplinary meeting" on September 23, 2003, regarding Bateman's violation of the Judicial Branch Workplace Philosophy, the creation of a hostile work environment, inappropriate behavior and actions, and unauthorized absence.  Id., Ex. 8.  At her deposition, Bateman testified that she never received this letter, and there is no evidence that a meeting took place on the 23rd. Id., Bateman Depo Tr., p. 57.  On September 15, 2003, Bateman also received notice that she was being transferred to the Putnam court facilitiy.  Defs' Rule 56(a)(1) Statement, ¶ 51, Kewer Aff., ¶ 16.  This transfer was apparently requested by Bateman, after consultation with Judge Foley.

6

Id., Bateman Depo. Tr., ¶ 79.

Bateman, after notifying Fialkievicz on September 30, 2003, took sick leave on October 1 and 2, 2003, due to workplace anxiety. Id. at p. 78, 87, Ex. 13.

On November 4, 2003, Kewer wrote to Bateman to notify her of a "predisciplinary meeting" on November 7, 2003, regarding Bateman's violation of the Judicial Branch Workplace Philosophy, the creation of a hostile work environment, inappropriate behavior and actions, and unauthorized absence. Id., Ex. 8. According to the defendants, the purpose of the meeting was to determine if cause excited to impose discipline upon Bateman for inappropriate behavior toward Fialkievicz and an unauthorized leave of absence. Defs' Rule 56(a)(1) Statement, Fialkievicz Aff., ¶ 25.

The predisciplinary meeting was held on November 7, 2003, and was attended by Bateman, her union representative, Fialkievicz, and Kewer. According to Bateman, she was ordered by Kewer at the meeting not to speak with Judge Foley or Nancy Brown. Pl's Rule 56(a)(2) Statement, ¶ 16, Pls' Resp. to Defs' Interrogatories, ¶ 7. According to the defendants, the parties at the meeting addressed Bateman's attitude toward Fialkievicz, her absences from work, and her grievances. Defs' Rule 56(a)(1) Statement, ¶ 60.

On November 13, 2003, Bateman submitted her resignation letter, which stated that she was resigning due to the hostile work environment created by Fialkievicz and the hostility shown to her by Kewer during the meeting on November 7, 2003. Id., Ex. 10.

## II. LEGAL STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000). The moving party bears the burden of showing that no genuine factual dispute exists. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). "A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law." Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)(quotation marks omitted). When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986), and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a Summary Judgment Motion." Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)). Additionally, a party may not rest on the "mere allegations or

denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the Summary Judgment Motion are not credible).  Moreover, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Jeffreys, 426 F.3d at 554.

### III.   DISCUSSION

In her complaint, Bateman asserts a First Amendment retaliation claim under 42 U.S.C. § 1983, alleging that she was constructively discharged from her employment in the Judicial Branch through the actions of Fialkievicz and Kewer, in retaliation for statements she made regarding the management and supervision of the court monitor program.

It is well established that "[p]ublic employees do not surrender their First Amendment rights to comment on matters of public interest by virtue of their acceptance of government employment." Cobb v. Pozzi, 363 F.3d 89, 101 (2d Cir. 2004).  However, "[i]n measuring the extent of this right, the interests that must be carefully balanced are the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Sheppard v. Beerman, 317 F.3d 351, 355 (2d Cir. 2003)(quoting Pickering v. Bd. of Educ., 391 U.S.

563, 568 (1968). "In order to establish a First Amendment claim of retaliation as a public employee, [a plaintiff] must show that (1) her speech addressed a matter of public concern, (2) she suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action." Konits v. Valley Stream Cent. High School Dist., 394 F.3d 121, 124 (2d Cir. 2005) (internal quotation marks omitted).

The defendants argue, inter alia, that Bateman cannot produce evidence sufficient to demonstrate a genuine issue of material fact with regard to her ability to sustain her burden of proof for any of these elements, and, thus, her claim must fail as a matter of law. Because the court finds that Bateman's statements did not address matters of public concern, the court does not reach the defendants' arguments as to the other elements of Bateman's claim.

"Speech by a public employee is on a matter of public concern if it relates to any matter of political, social, or other concern to the community." Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Id. (quoting Connick). "While this determination may be somewhat fact-intensive, it presents a question of law for the court to resolve." Id.

In determining whether speech is protected, the court evaluates whether the speech "was calculated to redress personal grievances or whether it had a broader

public purpose." Hoyt v. Andreucci, 433 F.3d 320, 330 (2d Cir. 2006). "[M]ere employee grievances do not qualify as matters of public concern." Id. While the personal nature of a speaker's motives does not dispositively determine whether particular speech is of a public concern, the motives of a speaker may inform a court's inquiry into the nature of the speech. Cioffi v. Averill Park Central School Dist. Board of Ed., __ F.3d __, 2006 WL 853259, at *7 (2d Cir. 2006). The "mere fact that a public employee chooses to discuss privately his concerns with his employer as opposed to expressing his views publicly does not alter the analysis." Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir. 1991). Nonetheless, whether the purpose of the speaker was to inform the public is a relevant factor to the analysis. Connick, 461 U.S. at 148. Discussing the breadth of the public concern doctrine, the Supreme Court in Connick noted that,

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark-and certainly every criticism directed at a public official-would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

461 U.S. at 149.

Viewing Bateman's statements together, in light of the circumstances of her employment, it is clear that the statements she made regarding the training and management of court personnel were made in the context of addressing her own difficult working relationship with Fialkievicz, and were not calculated to, nor made with

the intention of, furthering a broader public purpose. The issues that Bateman testified to raising with Judge Foley and Nancy Brown, such as her feeling that Fialkievicz was managing the officer poorly and that Fialkievicz was targeting her, overwhelmingly related to her personal grievances with Fialkievicz. The court notes in particular that, in summarizing the content of the issues she raised with Judge Foley, Bateman described them as "any kind of complaint that I had regarding Leslie." Defs' Rule 56(a)(1)Statement, Bateman Depo. Tr., p. 114. Similarly, the statements that Bateman made regarding unauthorized recordings of court proceedings to her union representative appear to have been made primarily in the context of addressing her workplace relationship with Fialkievicz.

In this regard, Bateman's statements are like those of the plaintiffs in Ezekwo and Connick. In Ezekwo, a resident at a public hospital authored a series of letters and memoranda regarding the conduct of her supervisors. 940 F.2d at 777. In particular, the plaintiff's complaints related to

> (1) the failure of attending physicians and lecturers to be present at scheduled times, (2) the manner in which she was treated by Dr. Farris and the attending physicians, (3) the manner in which Dr. Farris evaluated her performance, (4) her lack of opportunity to perform surgery, (5) the lack of personal attention she received from the attending physicians, (6) the lack of proper hospital maintenance, (7) [the program director's] poor management and motivational skills, and (8) the poor teaching methods of the attending physicians.

Id. The Second Circuit noted that, while one or two of the plaintiff's comments "could be construed broadly to implicate matters of public concern," the "general nature of her statements," when "[v]iewed objectively and as a whole," was personal and related to

12

her own situation within the residency program.  Id.; see also, Cioffi, 2006 WL 853259 at *8 (discussing Ezekwo, noting that it did not establish a "primary purpose test" but found instead that the statements in question did not address matters of public concern when viewed objectively and as a whole.").  In Connick, the Supreme Court found that a questionnaire prepared by a district attorney who had received an unwanted transfer substantially related, with one exception, to the plaintiff's dispute regarding her transfer and not with any matter of public concern.  461 U.S. at 148.  The Court noted that the questionnaire did not seek to inform the public of any actual or potential wrongdoing or breach of public trust but, instead, reflected "one employee's dissatisfaction with a transfer."  Id.  Here, when viewed as a whole, it is evident that the statements that Bateman made to various court personnel were made only to address her personal grievances with Fialkievicz and were not made with any public purpose in mind.

In addition, Bateman has not produced evidence demonstrating that the actual content of the statements in question related to matters of "political, social, or other concern to the community," and not merely to only to matters internal to the Judical Branch.  Ganim, 342 F.3d at 112.  Bateman suggests that her statements regarding unauthorized recordings of court proceedings related to a public concern because such unauthorized recordings would result in no proper official record being made as required by law.  See Pl's Brief in Opp., p. 1.  However, Bateman does not identify any law which would invalidate the use of a recording, or a transcript prepared from a recording, of a court proceeding that was made by a judicial employee other than an

official court reporter.  Thus, Bateman has not demonstrated that any public interest is actually implicated by this practice.  Bateman also suggests, in her pleadings, that the concern she raised regarding the policy of not charging judges and state's attorneys for transcript copies related to the potential unfairness to defendants who must pay for transcripts.  Pl's Rule 56(a)(2) Statement, Part B. ¶ 15.  The evidence to which Bateman cites for this contention– her deposition testimony– does not indicate what the content of her statements regarding the issues she raised in relation to the distribution of transcripts actually were.  See Def's Rule 56(a)(1) Statement, Bateman Depo. Tr., p.p. 107-114.  However, Bateman's interrogatory answers on the subject indicates her concern regarding the distribution of transcripts was that new employees were not being properly trained to provide the free copies to the judges and state's attorneys, and not that the policy was an improper one.  Pl's Rule 56(a)(2) Statement, Bateman Inter., ¶ 2.  The court finds that Bateman's statements regarding these issues, as well as her other statements regarding the management of the court monitor program, only relate to issues internal to the Judicial Branch and do not relate to matters of public concern such that they can form the basis of a constitutional claim.

Because no genuine issue of material fact exists with regard to Bateman's inability to sustain her burden of proof on an essential element of her claim, the court need not reach the defendants' other arguments regarding Bateman's claim.  Accordingly, the defendants' motion for summary judgment is GRANTED.

IV.   **CONCLUSION**

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. No. 27] is GRANTED.  The clerk of court is directed to close this case.

**SO ORDERED.**

Dated this 15th day of May, 2006, at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge